UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AQUINELLA RAZZ,

      Plaintiff,

v.                                Case No:   2:16-cv-31-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Aquinella Razz's Complaint (Doc. 1) filed on January 19, 2016.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).[1]

## I.  Social Security Act Eligibility, the ALJ's Decision, and Standard of Review

### A.  Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in

---

[1]  Plaintiff moved "the Court to enter judgment" pursuant to Fed. R. Civ. P. 56.  (Doc. 21 at 1). This Court's role in social security matters is governed by 42 U.S.C. § 405(g).  Accordingly, the standard of review pursuant to 42 U.S.C. § 405(g) is set forth in this Opinion and Order.

death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On September 5, 2012, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income asserting an onset date of August 1, 2012, the day after her previous claim was denied. (Tr. at 185, 189). Plaintiff's applications were denied initially on November 2, 2012 (Tr. at 87-88), and upon reconsideration on January 22, 2013 (Tr. at 119-20). A video hearing was held before Administrative Law Judge ("ALJ") S. D. Schwartzberg on March 24, 2014. (Tr. at 30-48). The ALJ issued an unfavorable decision on April 10, 2014. (Tr. at 9-29). The ALJ found Plaintiff not to be under a disability from August 1, 2012, through the date of the decision. (Tr. at 23).

On December 7, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6). Plaintiff filed a Complaint (Doc. 1) in this Court on January 19, 2016. Defendant filed an Answer (Doc. 13) on April 5, 2016. The parties filed Memoranda in support. (Docs. 21-22). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 16). This case is ripe for review.

### C.      Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2014. (Tr. at 14).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2012, the alleged onset date.  (Tr. at 14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "degenerative changes of the right knee, degenerative changes of the lumbar spine, hypertension, history of nonischemic cardiomyopathy, obesity, and bipolar disorder."  (Tr. at 14).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

---

[2] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 16).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the exception of the following additional limitations:  "frequent posturals (such as climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling) except no climbing ladders, ropes, or scaffolds; avoidance of concentrated exposure to hazards; simple, routine, repetitive work; occasional contact with coworkers and supervisors; and no contact with the public."  (Tr. at 17).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work.  (Tr. at 22).

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. at 22).  Specifically, the vocational expert ("VE") testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as:  (1) Housekeeping cleaner, (2) Office helper, (3) and Small product assembler.  (Tr. at 23).  The ALJ found the VE's testimony to be acceptable and consistent with the information contained in the *Dictionary of Occupational Titles* ("DOT") except that the VE "testified that the claimant's past relevant work as actually performed is not consistent with the description of how the claimant's past relevant work is generally performed and is based on the claimant's description of her job duties and responsibilities."  (Tr. at 23).  Based on the VE's testimony and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff "is capable of making a

successful adjustment to other work that exists in significant numbers in the national economy."
(Tr. at 23). The ALJ determined, therefore, that a finding of "not disabled" was appropriate
under Medical-Vocational Rule 202.21. (Tr. at 23).

Accordingly, the ALJ concluded that Plaintiff was not under a disability from August 1,
2012, through the date of the decision. (Tr. at 23).

### D.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the
correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether
the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390
(1971). The Commissioner's findings of fact are conclusive if supported by substantial
evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence
must do more than merely create a suspicion of the existence of a fact, and must include such
relevant evidence as a reasonable person would accept as adequate to support the conclusion.
*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835,
838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district
court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and
even if the reviewer finds that "the evidence preponderates against" the Commissioner's
decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932
F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking
into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560;
*accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must
scrutinize the entire record to determine reasonableness of factual findings).

## II.     Analysis

On appeal, Plaintiff raises two issues:

(1) The ALJ failed to properly analyze all the evidence of record in accordance with Social Security's established policies and procedures.

(2) The ALJ's findings at Step Five of the sequential evaluation process are not supported by substantial evidence of record.

(Doc. 21 at 2).  The Court addresses these issues below.

### A.      The ALJ's Review of the Record

Plaintiff first contends that "[t]he ALJ has a duty to consider all evidence in a claimant's case record."  (Doc. 21 at 5 (citing 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3))).  In the present action, Plaintiff contends that the ALJ did not properly evaluate her mental impairments.  (*See id.* at 5).  Plaintiff argues that the ALJ must consider Plaintiff's symptoms "by applying the seven factors found in 20 C.F.R. 404.1529(c)(3) and 416.929(c)(3), and consider the complete evidentiary record in conjunction with the regulatory factors when evaluating the claimant's credibility with respect to her testimony regarding the limitations caused by her impairments."  (Doc. 21 at 5 (citing Social Security Ruling ("SSR") 96-7p)).  Plaintiff specifically contends that the ALJ erred by not evaluating her claims according to the Social Security Administration's Program Operations Manual Systems ("POMS").  (*Id.* at 6-8).

Additionally, Plaintiff contends that the ALJ erred by failing to discuss Plaintiff's intermittent explosive disorder ("IED").  (*Id.* at 8).  Plaintiff argues that the ALJ's decision did not include "any discussion of Plaintiff's IED and how it affects Plaintiff's ability to interact with anyone, including supervisors."  (*Id.* at 8).  Plaintiff argues that "[w]ithout thorough evaluation of the Plaintiff's IED, the ALJ's conclusion that Plaintiff can be supervised or make a successful adjustment to other work cannot be upheld" and that "[m]erely restricting the claimant

to low-skilled work and no contact with the public is not responsive to the individualized, thorough evaluation required by SSR 85-15." (*Id.* at 8-9).

Further, Plaintiff argues that the ALJ failed to adequately address her Global Assessment of Functioning ("GAF") scores. (*Id.* at 9). Plaintiff contends that "[t]he ALJ utilized portions of the medical records containing the GAF scores that supported his conclusions; however, he ignored the GAF scores in the same records which discounted or contradicted his conclusion." (*Id.*). Plaintiff argues that "the ALJ's selective reliance on the GAF scores contained in only some of the medical records containing, to the exclusion of others, and without adequately addressing the specifics surrounding the GAF scores themselves . . . violates the ALJ's duty to consider all evidence in a claimant's case record." (*Id.* at 9).

Finally, Plaintiff argues that "upon remand, the ALJ should be required to also consider the combined impacts of all impairments, severe and non-severe (See 20 C.F.R. 404.1545, 416.945), on Plaintiff's abilities to maintain concentration, persistence, and pace, and on her abilities to maintain regular attendance within customary tolerances" such as "the impact of Plaintiff's abilities from her combination of established severe or non-severe impairments of migraine headaches, high cholesterol, hepatitis B, rectal leakage, and back pain due to degenerative disc disease / disc bulges." (*Id.* at 10).

Defendant disagrees, arguing that substantial evidence supports the ALJ's decision. (*See* Doc. 22). Defendant contends that ALJ properly analyzed the evidence of record. (*Id.* at 4).

As an initial matter, Defendant contends that Plaintiff waived any argument that the ALJ improperly assessed her subjective complaints because Plaintiff did not specifically argue that point. (*Id.* at 5 (citations omitted)). Even if Plaintiff did not waive that argument, Defendant contends that the ALJ's RFC finding properly included limitations to only "occasional contact

with coworkers and supervisors." (*Id.* (citing Tr. at 14)).  Defendant argues that "[s]ubstantial evidence supports the ALJ's RFC finding and Plaintiff has failed to demonstrate that she has additional mental limitation that the ALJ failed to consider." (*Id.*).  Despite Plaintiff's diagnosis of bipolar disorder with IED, Defendant argues that Plaintiff has provided no evidence showing her alleged IED caused "any additional limitations on her ability to work beyond those resulting from her bipolar disorder as found by the ALJ." (*Id.*).  Defendant argues that "[t]he mere existence of a diagnosis does not show Plaintiff had a severe impairment." (*Id.*).  Moreover, Defendant argues that "substantial evidence supports the ALJ's statement that Plaintiff improved with treatment, as well as the ALJ's RFC finding related to her mental impairment." (*Id.* (citing Tr. at 646-48, 650-52, 667-68, 681, 700, 714-17, 721-22, 726-28)).

Defendant further contends that Plaintiff's arguments that the ALJ did not comply with SSR 85-15 is without merit.  On this point, Defendant points out that Plaintiff was assessed both exertional and nonexertional limitations. (*Id.* at 9).  Defendant contends, however, that Social Security Ruling 85-15 does not apply because it "focuses on the evaluation of impairments for claimants who have only non-exertional impairments, not a combination of exertional and non-exertional impairments." (*Id.*).

Similarly, Defendant argues that Plaintiff's arguments regarding the GAF score are "incorrect." (*Id.* at 12).  Defendant argues that the ALJ correctly evaluated Plaintiff's GAF scores by giving them "little weight because no treating or non-treating providers clearly explained the reasons behind the various GAF ratings." (*Id.* at 9).  Defendant further notes that the Commissioner has declined to endorse GAF scores because the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." (*Id.* at 13 (citation and internal quotation marks omitted)).

Finally, Defendant notes that the ALJ found that Plaintiff had a number of impairments at step two of the sequential evaluation and continued on with the analysis. (*Id.* at 8). As such, Defendant argues that any error at step two is harmless. (*Id.*). Defendant further argues that the ALJ properly considered the combined effects of Plaintiff's severe and non-severe impairments at step three and in Plaintiff's RFC assessment. (*Id.* at 14). Defendant argues that "the ALJ's RFC finding reflects the combined effect of Plaintiff's impairments on her work ability." (*Id.*).

Upon review, the Court agrees with Defendant and finds that the ALJ's decision is supported by substantial evidence and was decided under the correct legal standards. *McRoberts*, 841 F.2d at 1080. Specifically, Plaintiff has not met her burden of showing that the ALJ improperly analyzed her mental impairments. *See Hines-Sharp*, 511 F. App'x at 915 n.2.

First, to the extent Plaintiff argues that the ALJ failed to find any of Plaintiff's mental impairments – such as the alleged diagnosis of IED – to be severe, the Court finds that this error is harmless. Specifically, the Court notes that an impairment is "severe" under the Commissioner's regulations if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c); 416.921(a). According to the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ must only consider the claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the ALJ made a determination that Plaintiff suffered from a number of severe impairments including:  degenerative changes of the right knee, degenerative changes of the lumbar spine, hypertension, history of nonischemic cardiomyopathy, obesity, and bipolar disorder.  (Tr. at 14).  Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe.  *See Heatly*, 382 F. App'x at 825.  Rather, the only requirement is that the ALJ considered all of Plaintiff's impairments in combination, whether severe or non-severe.  *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe.  For instance, in making his RFC determination, the ALJ stated that:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. at 18).

Moreover, at step two, the ALJ specifically considered Plaintiff's mental impairments and, in fact, found one of them to be severe—Plaintiff's bipolar disorder.  (Tr. at 17).  In addition to evaluating Plaintiff's mental impairments at step two, the ALJ also reviewed Plaintiff's mental impairments in the RFC determination and at step four of the sequential evaluation.  (*See* Tr. at 6-11).

While the ALJ never specifically mentions the words "intermittent explosive disorder" or "IED," the Court notes that it is unclear whether IED even constitutes a separate diagnosis from bipolar disorder.  Records from Lee Mental Health Center provide a description of a condition called "bipolar disorder *with* Intermittent Explosive disorder."  (Tr. at 536 (emphasis added)).

Plaintiff has provided no clarity on this point.  Regardless, the ALJ's decision specifically cites to medical records from Lee Mental Health Center that the ALJ considered.  (Tr. at 20 (citing Tr. at 536)).  Those records describe Plaintiff's alleged IED.  (Tr. at 536).  Accordingly, because the ALJ cited to and considered medical records containing a description of Plaintiff's IED, it is clear that the ALJ considered Plaintiff's IED.  (Tr. at 20 (citing Tr. at 536)).

Upon review, therefore, the record demonstrates that the ALJ considered all of Plaintiff's mental impairments in combination with Plaintiff's other impairments of record.  Accordingly, the ALJ applied the correct legal standard and did not err in failing to find any of Plaintiff's mental impairments to be non-severe, or if he did err, the error was harmless.  *See Heatly*, 382 F. App'x at 825.

Furthermore, the record does not support a conclusion that the ALJ erred in applying the applicable standards as to POMS, SSR 85-15, or the GAF scores.

First, as to POMS, the Court finds that the ALJ's alleged failure to follow POMS does not entitle Plaintiff to the relief she seeks.  *See Wells v. Comm'r of Soc. Sec.*, 430 F. App'x 785, 786 (11th Cir. 2011).  In *Wells v. Commissioner of Social Security*, the Eleventh Circuit refused to reverse the Commissioner's decision for an alleged failure by the ALJ to follow POMS.  *Id.* There, the court noted that POMS does not have the force of law.  *Id.*  Additionally, the court indicated that a violation of the SSA's internal guidelines does not entitle a claimant to relief.  *Id.* Thus, because POMS does not have the force of law and because a violation of the SSA's internal guidelines does not entitle the claimant to the relief sought, the court found that it "need not address whether the Commissioner adhered to the POMS."  *Id.*

Here, the same standard applies.  Specifically, POMS does not have the force of law.  *Id.* Moreover, a violation of the SSA's internal guidelines by the ALJ does not entitle Plaintiff to the

relief she requests.  *See id.*  Thus, the Court need not address Plaintiff's argument that the ALJ

erred by failing to adhere to POMS because failing to adhere to POMS does not entitle Plaintiff

to the relief she seeks.  *See id.*  Moreover, even assuming *arguendo* that the ALJ failed to comply

with POMS, Plaintiff has not demonstrated that the ALJ otherwise failed to evaluate Plaintiff's

claims using the correct legal standards.  Plaintiff cites 20 C.F.R. §§ 404.1529(c)(3) and

416.929(c)(3) as the regulations with which the ALJ must comply with in evaluating Plaintiff's

symptoms.  Nevertheless, Plaintiff has not shown that the ALJ failed to consider any of the

relevant factors as required by these regulations.  Thus, Plaintiff's arguments on this point fail.

Similarly, as to SSR 85-15, Social Security Rulings are not binding on this Court.  *See*

*Young v. Colvin*, No. 3:14-cv-888-J-JRK, 2015 WL 4620573, at *5 (M.D. Fla. July 31, 2015);

*see also Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 n.4 (11th Cir. 2011).  More

importantly, however, SSR 85-15 is inapplicable.  As Defendant correctly points out, SSR 85-15

only "focuses on the evaluation of impairments for claimants who have *only* non-exertional

impairments, not a combination of exertional and non-exertional impairments."  (Doc. 22 at 9

(emphasis added)).  Plaintiff was assessed *both* exertional and non-exertional impairments in the

RFC.  (Tr. at 17).  Thus, this Social Security Ruling is not applicable and does not support

Plaintiff's contentions.

Finally, as to the GAF scores, this Court has recognized that GAF scores are of

"questionable value in determining an individual's mental functional capacity."  *Wilson v.*

*Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009) (internal citation omitted).  In fact, there is

no rigid requirement that an ALJ must state with particularity the weight given to GAF scores.

*See Hurt v. Comm'r of Soc. Sec.*, No. 6:12-cv-214-Orl-DAB, 2013 WL 462005 at, *4 (M.D. Fla.

Feb. 7, 2013).

Here, however, the ALJ specifically stated the weight given to the GAF scores and explained the reasons for giving the scores little weight.  (Tr. at 21).  The ALJ stated "[t]he undersigned has considered the GAF scores assigned and finds that they can be assigned little weight because no treating or non-treating providers clearly explained the reasons behind the GAF rating."  (Tr. at 21).  The ALJ continued, stating "[t]he GAF is only a snapshot opinion about the level of functioning.  It is one opinion that we consider with all the evidence about a person's functioning."  (Tr. at 21).  Based on his review, the ALJ found that "[t]he medical evidence shows that the claimant was improved with treatment.  While the claimant experiences symptoms of bipolar disorder, the records show that she is able to communicate with others, act in her own interest, and perform most ordinary activities."  (Tr. at 21).

Upon consideration, the Court finds that the ALJ's reasons for giving the GAF scores little weight are supported by substantial evidence.  For instance, Plaintiff has not shown that the ALJ's finding that "no treating or non-treating providers clearly explained the reasons behind the GAF rating" is incorrect.  (Tr. at 21).  A review of the medical records shows that Plaintiff's GAF scores were, in fact, given without further explanation.  (*See e.g.*, Tr. at 502, 507, 534, 578, 631, 633).  Given the questionable validity of GAF scores and the ALJ's observation that a GAF score is only a snapshot to consider with "*all the evidence about a person's functioning*" (Tr. at 21 (emphasis added)), the Court cannot find error with the ALJ's reason for affording the GAF scores little weight.

Moreover, the record also supports the ALJ's finding that Plaintiff was improved with treatment.  (*See* Tr. at 21).  For instance, as noted by the ALJ, the record shows that Plaintiff had no additional inpatient stays after her second admittance to Lee Mental Health Center in November 2012.  (Tr. at 20).  Because Plaintiff received treatment after that time (*see* Tr. at 646,

13

650), the lack of any additional inpatient stays supports the ALJ's conclusion that Plaintiff showed improvement with treatment. (*See id.*). In fact, Plaintiff appears to concede that she improved after November 2012, noting that by the end of 2013, "Plaintiff's insight and judgment improved from 'poor' to 'fair,' and she experienced hallucinations not as often as previously." (Doc. 21 at 4 (citing Tr. at 714)). Thus, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff was improved with treatment. (*See* Tr. at 21).

Furthermore, the record supports the ALJ's conclusion that that Plaintiff can communicate with others, act in her own interest, and perform most ordinary activities. (*See* Tr. at 21). For instance, the record does not contradict the ALJ's finding that Plaintiff can communicate with others. (*See.* Tr. at 21). Specifically, the ALJ found that Plaintiff only has moderate difficultly in social functioning and that Plaintiff can follow instructions. (Tr. at 17). Plaintiff did not contest this finding. Additionally, the record supports the ALJ's finding that Plaintiff can act in her own interest. (*See* Tr. at 21). In fact, the ALJ made uncontested findings that Plaintiff can pay bills, count change, handle a savings account, and use a checkbook or money orders. (*See* Tr. at 17, 21). Plaintiff has not provided contrary evidence on this point. Finally, the ALJ made findings – uncontested by Plaintiff – that Plaintiff had only mild difficulties in performing activities of daily living. (Tr. at 17; *see also* Tr. at 73). The ALJ further found that Plaintiff could prepare her own meals, make the bed, and vacuum. (Tr. at 17; *see also* Tr. at 73). The record further supports the ALJ's finding that Plaintiff can drive (*see* Tr. at 34; *see also* Tr. at 73), and that she can shop in stores (Tr. at 73). Thus, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff can communicate with others, act in her own interest, and perform most ordinary activities. (*See* Tr. at 21).

Upon review, there is substantial evidence supporting the ALJ's reasons for giving the GAF scores little weight. Additionally, the Court finds that the reasons for discounting the GAF scores support all of the ALJ's findings regarding Plaintiff's mental impairments. Specifically, the medical evidence of records supports the ALJ's findings that Plaintiff's mental impairments improved with treatment and that Plaintiff can communicate with others, act in her own interest, and perform most ordinary activities. (*See* Tr. at 21).

Furthermore, even assuming *arguendo* that Plaintiff's IED constitutes an additional impairment, the Court notes that the mere existence of an impairment does not reveal the extent to which it limits Plaintiff's ability to work nor does its existence undermine the ALJ's determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (stating that the "'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work"). Here, Plaintiff has not shown that she had any additional limitations based on her IED or that she has greater mental limitations than those included in her RFC. Thus, Plaintiff has failed to meet her burden of demonstrating that the ALJ erred on this ground.

In sum, substantial evidence of record supports the ALJ's decision as to his review of Plaintiff's mental impairments. The Court, therefore, affirms as to this issue.

**B.     The ALJ's Step Five Analysis**

The Court next addresses Plaintiff's contention that the ALJ erred at Step Five of the sequential evaluation. (Doc. 21 at 10-11). Specifically, Plaintiff argues that the ALJ "failed to properly assess, and include limitations from, the Plaintiff's intermittent explosive disorder in his RFC assessment." (*Id.* at 10). As a result, Plaintiff contends that "the ALJ's findings that

Plaintiff can make a successful adjustment to the work of housekeeping cleaner, office helper, or small product assembler (Tr. 23) are not supported by the evidence of record." (*Id.*).

Plaintiff further argues that the ALJ's findings that Plaintiff is to have "no contact with the public" directly contradicts the DOT requirements for those three listed jobs. (*See id.* at 11). As a result, Plaintiff also argues that the ALJ's finding that the VE's testimony is consistent with the DOT is incorrect. (*See id.*). Plaintiff contends that "[p]ursuant to SSR 00-4p, an ALJ may not rely on expert testimony which contradicts the DOT unless the record supports the deviation." (*Id.*). Plaintiff argues that "the ALJ's opinion is completely void of any discussion regarding the factors to support deviation from the DOT." (*Id.*). As a result, Plaintiff argues that "reversal and/or remand is warranted especially in light of the Plaintiff's significant nonexertional impairments discussed above." (*Id.*).

Defendant disagrees. As an initial matter, Defendant contends that "Plaintiff did not identify any additional limitations not included in the ALJ's RFC finding that she believes were supported by the record" and, therefore, failed to meet her burden of proving that she had disabling limitations. (Doc. 22 at 15).

Moreover, Defendant argues that the DOT's descriptions of the jobs identified by the VE, in fact, support the ALJ's conclusion that the VE's statements are consistent with the DOT. (*See id.*). For these three positions, Defendant points out that the DOT states that these jobs include performing "any combination" of various duties and/or tasks. (*See id.* at 16-19). Defendant contends that the DOT's descriptions do not require all of the duties or tasks to be performed. (*See id.*). For instance, Defendant argues that "Plaintiff could perform the required duties of housekeeping cleaner without any contact with the public, the VE's testimony was consistent with the DOT." (*Id.* at 16). Further, Defendant argues that "[b]ecause Plaintiff could perform

the required duties of office helper with only occasional contact with co-workers and supervisors and no contact with the public, the VE's testimony was consistent with the DOT." (*Id.* at 17). Finally, Defendant argues that "[b]ecause Plaintiff could perform the required tasks of small parts assembler with only occasional contact with co-workers and supervisors, the VE's testimony was consistent with the DOT." (*Id.* at 19). Because these jobs can be performed without any inconsistent duties or tasks, Defendant argues that there is no conflict between the VE's testimony and the DOT. (*See id.* at 16-19).

Moreover, even if there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, Defendant argues that the testimony of the VE "trumps" the DOT because the DOT is not the only source of admissible information concerning jobs. (*Id.* at 19 (citing *Leigh v. Comm'r Soc. Sec.*, 496 Fed. App'x 973, 975 (11th Cir. 2012)).

Finally, Defendant argues that any one of the three jobs mentioned by the ALJ would amount to a "significant number" of jobs existing in the national economy. (*Id.* (citing *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)) As such, Defendant argues that "even if Plaintiff could only perform one of those three jobs, the ALJ's step five finding would be supported by substantial evidence." (*Id.* (citations omitted)).

Upon review of the record, the Court finds that substantial evidence supports the ALJ's conclusions at step five of the sequential evaluation. The Court specifically rejects Plaintiff's argument that "the ALJ failed to properly assess, and include limitations from, the Plaintiff's intermittent explosive disorder in his RFC assessment." (Doc. 21 at 10). As stated above, Plaintiff has not shown that she has any additional limitations based on her IED. Thus, the ALJ did not err by finding that Plaintiff can make a successful adjustment to the work of housekeeping cleaner, office helper, or small product assembler. (*See* Tr. at 23).

Furthermore, the Court is not convinced that there are any inconsistencies between the DOT's descriptions and the VE's testimony. A review of the DOT shows that Defendant's characterizations of the DOT for the three jobs listed by the VE is correct. *See* 1991 WL 672783, 1991 WL 672232, 1991 WL 679050. Specifically, on its face, the DOT's descriptions do not specifically require all of the duties or tasks to be performed for the jobs identified by the VE. *See id.* Instead, the DOT states that the three jobs listed by the VE involve performing "any combination" of various duties or tasks. *See id.*

For instance, even though the ALJ stated that Plaintiff should have "no contact with the public" (Tr. at 17), there is no indication that the job of housekeeper *must* include contact with the public. *See* 1991 WL 672783. Instead, the DOT only states that *one* of the duties performed by a housekeeper is "render[ing] personal assistance to patrons." *Id.* Similarly, for office helper and small products assembler, there is no indication that RFC's exclusion of "no contact with the public" or only "occasional contact with coworkers and supervisors" contradicts the DOT's description of the duties and/or tasks for these jobs. *See* 1991 WL 672232, 1991 WL 679050. Specifically, there is no indication from the DOT's descriptions that these two jobs must be performed with the duties and tasks excluded by Plaintiff's RFC—*i.e.*, "no contact with the public" or only "occasional contact with coworkers and supervisors." *See id.* Plaintiff does not adequately address this issue. Accordingly, the Court agrees with Defendant that because these jobs can be performed without the inconsistent duty(ies) and/or task(s) excluded by Plaintiff's RFC, there is no apparent conflict between the VE's testimony and the DOT. (*See* Doc. 22 at 16-19).

Even if there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the Eleventh Circuit has held that the "VE's testimony trumps the

DOT." *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) ("*Jones I*"). In *Jones I*, the

Eleventh Circuit affirmed the ALJ's decision even though the claimant argued that the VE's

testimony conflicted with the DOT. *Id.* The court held that when the DOT and VE's testimony

conflict, "the VE's testimony 'trumps' the DOT . . . because the DOT 'is not the sole source of

admissible information concerning jobs.'" *Id.* (citations omitted). The court held that "[d]ue to

the significance of the VE's testimony . . . an ALJ may rely solely on the VE's testimony." *Id.*

Accordingly, the court found that the ALJ's decision was supported by substantial evidence

when the ALJ relied on the VE's testimony, which stated that there were jobs that the claimant

could perform within her limitations. *Id.*

     Plaintiff cites to SSR 00-4p, a Social Security Ruling that was promulgated after *Jones I*,

in support of her position. (Doc. 21 at 11). SSR 00-4p requires an ALJ to "elicit a reasonable

explanation" for a conflict between the VE's testimony and the DOT before relying on the VE's

testimony. 2000 WL 1898704, *2.

     *Jones v. Commissioner of Social Security*, 423 F. App'x 936, 939 n.4 (11th Cir. 2011)

("*Jones II*"), addresses this issue. In *Jones II*, the Eleventh Circuit affirmed the ALJ's decision

when the claimant argued that the DOT and VE's testimony conflicted in violation of SSR 00-

4p. *Id.* at 939. The court, citing *Jones I*, stated that "[i]n this Circuit, a VE's testimony trumps

the DOT to the extent the two are inconsistent." *Id.* The court explained that it is not bound by

Social Security Rulings. *Id.* at 939 n.4. As such, the court held that "[t]o the extent SSR 00–4p

conflicts with [*Jones I*], we are bound by [*Jones I*]." *Id.* Thus, the court held that "[t]he ALJ

was permitted to base his findings . . . *exclusively* on the VE's testimony, irrespective of any

inconsistency with the DOT, and was not required to seek further explanation." *Id.* at 939

(emphasis added).

Applying that standard here, even if the VE's testimony was inconsistent with the VE, this Court is bound by *Jones I*, not SSR 00-4p. *See Jones II*, 423 F. App'x at 939 n.4. In this Circuit, the VE's testimony "trumps" the DOT where the two contradict. *See Jones I*, 190 F.3d at 1228. Moreover, an ALJ is permitted to rely exclusively on the VE's testimony in making determinations at step five. *Id.* Accordingly, even if the VE's testimony and the DOT contradict – and it does not appear that they do – the Court finds that the ALJ's decision is supported by substantial evidence because the ALJ could rely *solely* on the VE's testimony. *See Jones II*, 423 F. App'x at 939 n.4. Thus, the ALJ properly relied on the VE's testimony in finding that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 23). The ALJ was not required to seek further explanation. *See Jones II*, 423 F. App'x at 939 n.4. The ALJ's decision on this ground is, therefore, affirmed.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 13, 2017.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties